**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**Greenbaum, Rowe, Smith & Davis LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095
(732) 549-5600
Attorneys for Inn at Woodbridge, Inc., Debtor
David L. Bruck, Esq.

**Trenk, DiPasquale, Della Fera & Sodono, P.C.**
347 Mount Pleasant Avenue, Suite 300
West Orange, NJ 07052
(973) 243-8600
Attorneys for Metroplaza Hotel, LLC, Debtor
Joseph J. DiPasquale, Esq.

| | |
|---|---|
| In re:<br><br>**INN AT WOODBRIDGE, INC.,**<br><br>                              Debtor. | **JOINTLY ADMINISTERED**<br><br>Chapter 11 Proceeding<br><br>Lead Case No. 12-38603 (CMG) |
| In re:<br><br>**METROPLAZA HOTEL, LLC,**<br><br>                              Debtor. | Chapter 11 Proceeding<br><br>Case No.: 12-38611 (CMG) |

**JOINT DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION
OF DEBTORS, INN AT WOODBRIDGE, INC. AND METROPLAZA HOTEL, LLC**

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY.  THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

| | |
|---|---|
| **Trenk, DiPasquale, Della Fera & Sodono, P.C.**<br>Attorneys for Debtor, Metroplaza Hotel, LLC<br><br>/s/Joseph J. DiPasquale<br>By:_____<br>     Joseph J. DiPasquale, Esq.<br>**Dated:  July 17, 2013** | **Greenbaum, Rowe, Smith & Davis LLP**<br>Attorneys for Debtor, Inn at Woodbridge, Inc.<br><br>/s/David L. Bruck<br>By:_____<br>     David L. Bruck, Esq.<br>**Dated:  July 17, 2013** |

1464949.03

## TABLE OF CONTENTS

                                                                                    **Page**

**SECTION I**      **INTRODUCTION** ............................................................    2

**SECTION II**     **THE DEBTORS** ..............................................................    6

    **A.**         **History** .................................................................    6

        1.     Prepetition Matters ..............................................    7

    **B.**         WBCMT, Current Motions and the Exclusive Period .........    8

    **C.**         The Chapter 11 Process ..........................................    9

    **D.**         Operations of the Property During the Proceeding ..........    10

    **E.**         Creditor Bodies .....................................................    11

        1.     The Inn ..............................................................    11

        2.     Metroplaza Hotel ................................................    11

    **F.**         **Assets** ................................................................    12

        1.     The Property .......................................................    12

        2.     Cash .................................................................    12

        3.     Accounts Receivable ............................................    12

        4.     Leases Between the Inn and Metroplaza ..................    13

        5.     Metroplaza's Leases to Third Parties .......................    13

        6.     Furniture, Fixtures and Equipment ..........................    13

        7.     Hilton Franchise .................................................    13

        8.     The Liquor License ..............................................    13

        9.     Potential Causes of Action ....................................    13

      10.     Avoidance Actions ..............................................    13

    **G.**         **Liabilities** ............................................................    14

        1.     Claims of Creditors in the Inn Case ........................    14

|   |   | (a) | Administrative and Priority Claims ....................................... | 14 |
|   |   | (b) | Secured Claims ................................................................. | 14 |
|   |   | (c) | Unsecured Claims ............................................................. | 14 |
|   |   | (d) | Executory Contracts ......................................................... | 14 |
|   | 2. | Claims of Creditors in the Metroplaza Case ............................. | | 14 |
|   |   | (a) | Administrative and Priority Claims ....................................... | 14 |
|   |   | (b) | Secured Claims ................................................................. | 15 |
|   |   | (c) | Unsecured Claims ............................................................. | 15 |
|   |   | (d) | Executory Contracts ......................................................... | 15 |
| H. | | **Employment of Professionals** ........................................ | | 15 |

| SECTION III | | **SUMMARY OF THE PLAN** ........................................... | | 16 |
| A. | | **Classification and Treatment of Claims and Interest** ........... | | 16 |
|   | 1. | Allowed Secured Claim of WBCMT (Class 1) ............................. | | 17 |
|   | 2. | Allowed Unsecured Claims in the Inn/Metroplaza (Class 2) ....... | | 18 |
|   | 3. | Allowed Secured Claim-Township of Woodbridge (Class 3) ....... | | 18 |
|   | 4. | Deficiency Claim of WBCMT - Metroplaza Case (Class 4) .......... | | 19 |
|   | 5. | Disputed Unsecured Claim of WBCMT - Inn Case (Class 5) ....... | | 19 |
|   | 6. | Debtors' Equity Holder Claims (Class 6) ................................. | | 19 |
|   | 7. | Unclassified Claims ........................................................... | | 20 |
|   |   | (a) | Administrative Expense Claims ........................................... | 20 |
|   |   | (b) | Tax Claims ...................................................................... | 21 |
|   |   | (c) | United States Trustee Fees ............................................... | 21 |
| B. | | **Executory Contracts and Unexpired Leases** ........................ | | 21 |
| C. | | **Means of Implementing the Plan** ..................................... | | 22 |
|   | 1. | Transactions on the Effective Date ....................................... | | 22 |

(a)   The Effective Date ................................................. 22

(b)   Funding of the Plan ............................................... 22

(c)   Structure of Transaction .................................... 22

2.   Distribution of Property ................................................. 23

(a)   Requirement for Allowance of Claims .............................. 23

(b)   Time and Method of Distributions .................................. 23

(c)   Time Bar to Cash Payment ................................... 25

(d)   Compliance with Tax Requirements/US Trustee Fees ...... 25

(e)   Set-Offs ..................................................... 25

(f)   De Minimus Distributions ................................ 26

(g)   Treatment of Disputed Claims ........................... 26

(i)   Estimation of Claims ................................ 27

(ii)   Payments and Distributions on Disputed Claims... 27

(iii)   Pre-Payment of Allowed Claims ................... 28

3.   Post-Effective Notice .................................................. 28

4.   Limitation of Liability of Professionals in Connection with the Case, the Plan, Disclosure Statement and Related Documents .................................................. 28

SECTION IV   **DISCLOSURES REQUIRED BY 11 U.S.C. §§1129(a)(4) & (5)**   29

SECTION V   **FEASIBILITY** ................................................... 30

SECTION VI   **LIQUIDATION ANALYSIS** ............................ 30

SECTION VII   **RELEASE OF CLAIMS AGAINST INSIDERS AND AFFILIATES**   32

SECTION VIII   **CONFIRMATIO** ................................... 32

SECTION IX   **POST-CONFIRMATION** ............................. 35

A.   **Post-Confirmation Conversion/Dismissal** .................. 35

SECTION X   **CONCLUSION** ........................................... 36

## I.    **INTRODUCTION**

On December 6, 2012, the Inn at Woodbridge, Inc. (the "Inn") commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code, 11 U.S.C. §101, et seq.   Also on December 6, 2012, an affiliate, Metroplaza Hotel, LLC ("Metroplaza") filed a companion Chapter 11 proceeding (collectively, the "Debtors").    The cases are jointly administered. This Disclosure Statement is a Joint Disclosure Statement and pertains to both Debtors.  Chapter 11 of the Bankruptcy Code allows a Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). A Plan may provide that the Debtor will reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Inn and Metroplaza are the parties proposing the Plan sent to you in the same envelope as this document.  On July 17, 2013, the Debtors filed a Joint Plan and Disclosure Statement.   A hearing on the adequacy of the Disclosure Statement was held on _____ ____, 2013.  This Disclosure Statement was determined by the Court to be adequate for use in soliciting votes on the Plan.  **THE DOCUMENT YOU ARE READING IS THE JOINT DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ATTACHED AS EXHIBIT A.**

The Debtors' Plan is a liquidating plan.  The Debtors seek to sell at auction all of their Property and Assets excluding only certain Excluded Assets as defined in the Plan. Qualified Bidders who sign the Bidding Procedures Agreement will be permitted to attend and bid at the Sale.  In addition, WBCMT 2006-C24 Wood Avenue, LLC, ("WBCMT"), the secured creditor holding the mortgage encumbering the Property owned by Metroplaza will be permitted to credit bid up to the full amount of its secured

2

claim if it so desires; or it may set a reserve price beyond which it will not bid.  The Plan seeks a consolidation of both Debtors, as part of confirmation. Following the Sale and receipt of the funds the Debtors shall distribute the funds as are available to the holders of all allowed administrative, priority and to the Township of Woodbridge on account of its secured sewer rent lien and then turn over to the Creditor Trustee all remaining cash, accounts receivable, and Causes of Action.  The Creditor Trustee shall liquidate the Trust Assets and distribute them under the Plan to holders of allowed claims.  By virtue of the collection of a  carve out from the successful bidder at the Sale and by the use of the Excluded Assets, monies shall be available for claimants other than WMCMT, the holder of the mortgage encumbering the Property.  In a liquidation under Chapter 7, general unsecured claims would, alternatively, receive nothing because the secured claim of WBCMT would receive all the proceeds of sale.

ALL HOLDERS OF CLAIMS AND/OR EQUITY INTERESTS WITH RESPECT TO THE DEBTORS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS. PARTICULAR ATTENTION SHOULD BE GIVEN TO THOSE PROVISIONS OF THE PLAN IMPAIRING THE RIGHTS OF CREDITORS AND/OR EQUITY INTEREST HOLDERS.

**THE BANKRUPTCY COURT HAS SCHEDULED A HEARING ON CONFIRMATION OF THE PLAN FOR _____ \_\_, 2013 AT 2:00 P.M. (EST)**. THE DISCLOSURE STATEMENT WAS APPROVED BY THE BANKRUPTCY COURT ON _____ \_\_, 2013.  CREDITORS AND/OR EQUITY INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN SHOULD HAVE RECEIVED A BALLOT IN THE SOLICITATION PACKAGE CONTAINING THIS DISCLOSURE STATEMENT.  YOUR VOTE IS IMPORTANT.

3

THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND EQUITY INTEREST HOLDERS.  THE DEBTORS URGE ALL CREDITORS AND EQUITY INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN TO VOTE IN FAVOR OF THE PLAN.

**ANY SUCH CREDITOR OR EQUITY INTEREST HOLDER WHO WISHES TO VOTE ON THE PLAN SHOULD (1) COMPLETE THE ENCLOSED BALLOT; AND (2) MAIL THE ORIGINAL BALLOT TO GREENBAUM, ROWE, SMITH & DAVIS, LLP, 99 WOOD AVENUE SOUTH, ISELIN, NEW JERSEY 08830, ATTN:  DAVID L. BRUCK, ESQ.  THE DEADLINE FOR VOTING ON THE PLAN IS _____ \_\_, 2013.  BALLOTS MUST BE RECEIVED BY GREENBAUM, ROWE, SMITH & DAVIS LLP ON OR BEFORE SUCH DEADLINE IN ORDER TO BE COUNTED.  BALLOTS RECEIVED AFTER THE DEADLINE WILL NOT BE COUNTED.**

CREDITORS AND EQUITY INTEREST HOLDERS NEED NOT CAST A BALLOT TO RECEIVE A DISTRIBUTION UNDER THE PLAN.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON EACH AND EVERY CREDITOR AND EQUITY INTEREST HOLDER OF THE DEBTORS, REGARDLESS OF WHETHER THE CREDITOR OR EQUITY INTEREST HOLDER VOTED FOR OR AGAINST THE PLAN.

THE REPRESENTATIONS IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.   WHILE THE DEBTORS MAY FURNISH CREDITORS AND INTEREST HOLDERS WITH ADDITIONAL INFORMATION PRIOR TO THE VOTING DEADLINE IN ACCORDANCE WITH APPLICABLE LAW, THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCE IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY

TIME SUBSEQUENT TO THE DATE HEREOF. THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO ACCEPT OR REJECT THE PLAN. NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT SHALL CONSTITUTE, OR BE DEEMED TO CONSTITUTE, ADVICE ON TAX OR OTHER LEGAL CONSEQUENCES OF ANY REORGANIZATION ON THE HOLDERS OF CLAIMS OR EQUITY INTERESTS.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN. IT IS NOT TO BE CONSTRUED AS ADMISSIONS OR STIPULATIONS, BUT RATHER AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS.

NO INDEPENDENT AUDIT WAS CONDUCTED OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION CONTAINED IN THE DEBTORS' BOOKS AND RECORDS AND OTHER SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE. THE INFORMATION IS TRUE AND CORRECT TO THE BEST OF THE KNOWLEDGE OF DEBTORS. WHILE ALL REASONABLE EFFORTS HAVE BEEN MADE UNDER THE CIRCUMSTANCES TO BE ACCURATE, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THIS DISCLOSURE STATEMENT IS WITHOUT ERROR. NEITHER DEBTORS' COUNSEL NOR DEBTORS' ACCOUNTANTS HAVE UNDERTAKEN ANY SEPARATE ANALYSIS OF THE INFORMATION CONTAINED HEREIN. THUS, THEY ARE UNABLE TO WARRANT THAT THE DISCLOSURE STATEMENT IS WITHOUT ERROR. HOWEVER, NEITHER THE DEBTORS NOR DEBTORS' PROFESSIONALS ARE AWARE OF ANY ERRORS OR OMISSIONS.

5

NO PERSON IS AUTHORIZED BY THE DEBTORS IN CONNECTION WITH THE PLAN OR SOLICITATION OF VOTES FOR THE PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS OR SCHEDULES.

For purposes of this Disclosure Statement, all capitalized terms used but not defined herein shall have the meaning given them in the Plan.

## II.    **THE DEBTORS**

### A.    **History**

The Inn is a New Jersey corporation organized solely for the purpose of operating a Hilton Hotel and ancillary facilities located at 120 Wood Avenue South, Iselin, New Jersey.  The Hotel is located in a building owned by Metroplaza also a Debtor herewith.  Metroplaza owns the building and operates a portion of the building as offices for rent to tenants. Metroplaza leases a portion of the building to the Inn including the guest rooms, restaurants, banquet facilities and common areas. This is sometimes referred to herein as the Hotel Lease or Hotel Leases.  Metroplaza filed its Chapter 11 proceeding on December 6, 2012 as well and its case is jointly administered with the Inn.  The Inn's assets consist of the Hotel Leases, restaurants, a liquor license, bars, a fitness club, banquet facilities, meeting rooms, common areas, and two hundred guest rooms.  The Inn has been in operation since 1984.  The Hotel is franchised as a Hilton Hotel and operates pursuant to a Franchise Agreement with Hilton.   The Franchise Agreement is held by Metroplaza.   By its terms, the Franchise Agreement expires in July 2014.   Metroplaza rents approximately 167,000 square feet of office space to commercial tenants in the ordinary course of its business.

1464949.03

The Inn and Metroplaza have common ownership.   James K. Wolosoff ("Wolosoff") is the one hundred (100%) percent owner of the issued shares in the Inn and together with an entity known as Metroplaza Holdings, LLC, owns one hundred (100%) percent of the membership interests in Metroplaza Hotel, LLC.

1.   <u>Prepetition Matters</u>.  The Woodbridge Hilton is basically a business hotel, providing its facilities and services to the business community.   With its location adjacent to the Garden State Parkway, the New Jersey Turnpike, the Metropark train station, and within twenty (20) minutes of Newark International Airport, it is well situated.  Prior to the recession in 2007, the Inn and its affiliate, Metroplaza, operated profitably, but with the recession and the downturn in business travel, revenues dropped.   Similarly, as the economy declined, vacancies in the office component operated by Metroplaza increased.

On December 21, 2005, Metroplaza refinanced the mortgage then encumbering the Property with a lender identified as Artesia Mortgage Capital Corporation ("Artesia"). The Mortgage was in the face amount of $36 million (the "Loan").  While the Inn signed the Mortgage given to Artesia, it did not execute the Note evidencing the debt and has no direct borrowing relationship with the Lender.   The Loan was subsequently sold and assigned to WBCMT 2006-C24 Wood Avenue, LLC ("WBCMT" or "Lender"). Based upon information WBCMT is a trust consisting of various investors with varying interests in the trust assets. The Mortgage is a trust asset. The Loan is serviced by LNR Partners, LLC ("LNR").   Based upon information provided to the Debtors, "LNR" is a "non-member" Manager of WBCMT.

In January 2011, amortization payments commenced under the terms of the Note. Metroplaza was not able to generate sufficient cash flow to operate efficiently and pay the increased debt service and subsequently defaulted on the Note. Shortly thereafter, WBCMT commenced a foreclosure proceeding in the Superior Court of New Jersey, Middlesex County, Docket No. F-007163-11 entitled WBCMT 2006-C24 Wood Avenue, LLC v. Metroplaza Hotel, LLC, et al. On November 5, 2012, WBCMT filed a motion seeking the appointment of a receiver to operate the property. On December 6, 2012, the Debtors filed their Chapter 11 proceedings.

## B.   WBCMT, Current Motions and the Exclusive Period

WBCMT asserts that it has a secured claim in the Metroplaza case in the amount of $54,562,726[1] and an unsecured claim in the Inn case of $54,562,726[2]. The Inn disputes that WBCMT has a claim in the Inn case. The Inn filed a motion to expunge the WBCMT claim and a hearing is scheduled for August 15, 2013. WBCMT has filed a response requesting that the Inn's motion be denied.

WBCMT had commenced an adversary proceeding against Wolosoff on his guaranty of the Loan. Wolosoff is defending the suit on the guaranty and is represented by Okin, Hollander & DeLuca. WBCMT recently filed a motion for summary judgment against Wolosoff. The Debtors have filed a motion to stay further proceedings in the adversary proceeding against Wolosoff pending conclusion of the reorganization process. The hearing on these motions and others is scheduled for August 15, 2013 and the trial date in the adversary proceeding is set in October 2013.

---

[1] The claim of WBCMT is comprised of principal of $35,588,501; interest, late fees and related professional and other fees of $6,130,000 through the petition date; advances of $1,760,000 and a prepayment penalty of $11,110,832.
[2] In each case, WBCMT asserts that it is entitled to the accrual of costs, attorneys' fees and other charges.

8

The Debtors' original exclusive period to file plans was to expire on April 5, 2013. The Debtors requested that WBCMT through LNR consent to an extension of exclusivity so as to enable the Debtors to conclude discussions with interested parties but LNR refused. The Debtors then filed a motion to extend exclusivity to June 19, 2013 which motion was granted. By agreement with LNR, exclusivity was then extended to July 12, 2013 and now to July 22, 2013. The Debtors have agreed not to seek a further extension of exclusivity.

## C.    **The Chapter 11 Process**

Following the filing of the Chapter 11 proceedings by both the Inn and Metroplaza, the Debtors filed motions to retain professionals to represent them in the proceedings. Greenbaum, Rowe, Smith & Davis LLP was retained to represent the Inn and Trenk, DiPasquale, Della Fera & Sodono, P.C. was retained to represent Metroplaza. PricewaterhouseCoopers ("PwC") was retained to provide accounting and financial services to both Debtors. In the Inn case, the United States Trustee's Office appointed a committee of unsecured creditors and Mitnick & Malzberg was retained as counsel and Protiviti Inc. was retained as accountants to the Committee.

Both Debtors filed motions to use the cash collateral of WBCMT although the Inn did so out of caution, since as became evident, WBCMT holds no perfected security interest in the cash flow generated by the Inn. Pursuant to the Hotel Lease between the Inn and Metroplaza, the Inn pays fifty (50%) percent of the debt service and real estate taxes to Metroplaza as "rent." Metroplaza and WBCMT entered into a consensual Cash Collateral Order. Under the Order, Metroplaza initially paid WBCMT $150,000 per month, then $175,000 per month, and presently pays WBCMT $200,000 per month as

9

adequate protection.   Since the Filing Date, Metroplaza has paid WBCMT the sum of $950,000 through June 15, 2013.

The Debtors recognized that fresh capital was needed to address the issues confronting their reorganization effort and requested that PwC spearhead the effort to locate a potential investor(s) in order to fund the plans of reorganization.   PwC prepared a Management Presentation and Non-Disclosure Agreement ("NDA"). Solicitations were then sent to a variety of potential investors as selected from PwC's data base, Debtors' counsel and others including Committee counsel.   Solicitations of interest were sent to approximately thirty-eight (38) potential investors.   In all, fourteen (14) potential investors requested and received Management Presentations after signing NDAs.

The Debtors and their professionals received serious interest from a number of potential investors, met with them over a period of weeks and discussed their proposals. The Debtors reviewed the financial and management capability of all potential investors. The Debtors continue to meet with interested investors and believe that there are at least three (3) potential bidders for the Property in addition to WBCMT.   A Plan Supplement to be filed prior to the Confirmation Hearing will disclose the identity of those potential bidders who have met the requirements to be qualified bidders at the Sale and those who are rejected.

D.   **Operations of the Property During the Proceeding**

Since the commencement of the Chapter 11 cases, the Debtors have continued to operate and manage their business.   The Inn operates the hotel business which includes the two hundred (200) guest rooms, three (3) restaurants, bars, banquet

10

facilities and meeting rooms.  Metroplaza operates the office component.  The office component consists of 137,000 square feet of build-to-suit office space and an additional 30,000 square feet of flexible meeting space. Presently 42% of the available office space is vacant.  A Management Presentation dated February 2013 which was prepared by PwC details the operations of the Debtor and is attached hereto as **EXHIBIT B**.

As set forth in the Management Presentation, during 2012, Metroplaza generated $3,562,000 in gross revenues while the Inn generated $12,253,000 in gross revenues. The Management Presentation contains a conservative five (5) year projection.  The Monthly Operating Reports filed by the Inn and Metroplaza are current and reflect consolidated gross revenues of $7,665,000 through May 31, 2013.   The Debtors' operations are presently cash flow positive.

**E.    Creditor Bodies**

1.    The Inn:  The creditor body in the Inn case is comprised in general of administrative claims of professionals for the Inn, the unsecured claim held by WBCMT which the Inn disputes and general unsecured creditors. The claims of WBCMT are guaranteed by Wolosoff.  Excluding the $54,000,000 claim asserted by WBCMT, the general unsecured creditor body is approximately $470,000.  Administrative claims of professionals in the Inn case to date are approximately $740,000 as of May 31, 2013 and fee applications have been filed with hearing dates scheduled for August 6, 2013. Other priority and tax claims are estimated at $0.

2.    Metroplaza Hotel:  The creditor body in the Metroplaza case is comprised of the secured claim of WBCMT in the filed approximate amount of

11

$54,000,000, claims of professionals in the amount of $562,000 as of May 31, 2013 and fee applications have been filed with hearing dates scheduled for August 6, 2013. Claims of the tenants for security deposits are approximately $196,000, and vendor claims aggregate $210,000. A secured claim filed by Woodbridge Township for sewer rents for 2012 is in the approximate amount of $161,979. In addition, Hilton Hotel Inc., the holder of the franchise for the Hotel operated by the Inn is a claimant. In the event that the Debtors reject the franchise agreement, Hilton may have an additional claim as a rejection damage claim. In the event that either WBCMT is the successful bidder or a third party bidder is permitted to assume the franchise, there will be no rejection damage claim.

**F.    Assets**

1.    _The Property:_  The Property consists of the real estate and building owned by Metroplaza. The value of the property is uncertain. While prepetition the Debtors had obtained an appraisal at $35 million, recent information obtained from third parties in the New Jersey real estate brokerage community as well as prospective bidders reveals that the Property in its current condition and with a franchise with only one year remaining is worth considerably less than $35 million. Offers received to date have approximated $20 million.

2.    _Cash:_    The Inn has on hand as of May 31, 2013 approximately $678,000 in cash in the DIP operating account; Metroplaza has $294,000 on hand.

3.    _Accounts Receivable:_  As of the May 31, 2013, the Inn was owed approximately $95,000; and Metroplaza was owed $29,000.

4.     <u>Leases between the Inn and Metroplaza</u>.   The Inn's Leases with Metroplaza are current.   The Inn is paying Metroplaza monthly fifty (50%) percent of the adequate protection payments payable to WBCMT and fifty (50%) percent of the real estate taxes.

5.     <u>Metroplaza's Leases to Third Parties</u>.   Metroplaza's leases with third parties tenants aggregate approximately $285,148 per month plus tenant electric. Aggregate annual rents are $3,436,000 plus $109,000 as tenant electric.   The Inn's rent is approximately $1,846,000 and is included in the aggregate gross rent.

6.     <u>Furniture Fixtures and Equipment</u>.   The Debtors collectively own furniture fixtures and equipment used in connection with the operation of the Property. These assets were valued on the Petition Date as having a net value of $8,200,000.

7.     <u>Hilton Franchise</u>.   Metroplaza owns the Hilton Franchise. Hilton has advised that it will not renew the franchise when it expires in July 2014; and that it will dispute attempts at assumption of the franchise. For purposes of this Disclosure Statement the Debtors value the franchise as zero.

8.     <u>The Liquor License</u>.   The Liquor License is owned by the Inn.   While it has a value it is included within the value of the Property.

9.     <u>Potential Causes of Action</u>:   Debtors have not yet determined whether it has causes of action against third parties.   Debtors' Professionals are reviewing this matter.

10.     <u>Avoidance Actions</u>:   Debtors have made a preliminary analysis of avoidance actions as provided in the Bankruptcy Code including possible preference claims and fraudulent transfer claims against insiders and others, as well as any other

13

cause of action which the Debtors own.   The Debtors are presently reviewing their books and records to determine the nature and extent of any such avoidance actions. Avoidance claims will remain with the Debtors after the Sale and will be assigned to the Creditor Trust for prosecution and collection.

G.   **Liabilities**

1.   The Claims of Creditors in the Inn case are as follows:

(a)   <u>Administrative and Priority Claims in the Inn case</u>:

(i)   Professional Fees accrued but not allowed or paid to date are estimated at $740,000;

(ii)   Post-petition payables are estimated at $360,000; and

(iii)   Priority Claims are estimated at zero.

(b)   <u>Secured Claims</u>: There are no secured claims against the Inn.

(c)   <u>Unsecured Claims</u>: Total scheduled or filed unsecured claims aggregate $470,000 exclusive of the disputed claim filed by WBCMT.

(d)   <u>Executory Contracts</u>: Upon confirmation, any and all executory contracts not previously assumed or rejected will be deemed rejected.

2.   The Claims of Creditors in the Metroplaza case are as follows:

(a)   <u>Administrative and Priority Claims in the Metroplaza case</u>:

(i)   Professional Fees accrued but not allowed or paid to date are estimated at $562,000;

(ii)   Post-petition payables are estimated at $25,000 not including any prepaid rent amounts;

14

(iii)   Priority Tax Claims are filed at $64,971.19; Metroplaza believes the tax claims are invalid. The Debtor will be objecting to the tax claims. WBCMT has already objected to these claims.

(b)   Secured Claims: WBCMT has filed a proof of claim as a secured creditor in the amount of $54 million.   Woodbridge Township has asserted a secured claim for sewer rents in the approximate amount of $161,979.

(c)   Unsecured Claims: Total scheduled or filed unsecured claims aggregate $400,000 inclusive of the security deposit claims.

(d)   Executory Contracts: Metroplaza is reviewing the issue of its executory contracts and a Plan Supplement will be filed identifying those executory contracts to be assumed or rejected.

**H.   Employment of Professionals**

By order entered on January 10, 2013, the Inn retained Greenbaum, Rowe, Smith & Davis LLP ("Greenbaum") as their attorneys.  By Order date January 10, 2013, Metroplaza retained Trenk, DiPasquale, Della Fera & Sodono, P.C. ("Trenk") as their attorney.  By Order dated February 1, 2013, Debtors retained PricewaterhouseCoopers, LLP as Debtors' financial advisors.

The Inn has given a retainer to Greenbaum in the amount of $150,000.  As of May 31, 2013, unpaid fees to Greenbaum are $387,621.  Through Confirmation Greenbaum estimates that additional fees will be incurred of approximately $250,000.

PwC received no retainer.  Through May 31, 2013, unpaid fees total $465,058.  PwC estimates that fees through confirmation will approximate $665,000.

15

Metroplaza has given a retainer to Trenk in the amount of $37,500. As of May 31, 2013, unpaid fees to Trenk are $339,748. Trenk estimates that through Confirmation fees will be approximately $539,748.

Counsel to the Official Committee of Unsecured Creditors, Mitnick and Malzberg, P.C. has unpaid fees through May 31, 2013 of $60,490 and Protiviti Inc., the financial advisor to the Committee has unpaid fees as of May 31, 2013 of $48,730. They estimate that additional fees through Confirmation shall aggregate an additional $50,000.

## III.   **SUMMARY OF THE PLAN**

### A.   **Classification And Treatment Of Claims And Interests**

The Plan divides holders of Claims against the Debtors, other than Creditors with Unclassified Claims, into Classes based on their legal rights to satisfaction of the Claims. Only Allowed Claims shall receive distributions under the Plan. Claims that have not become Allowed Claims or that are subject to an objection before the Bankruptcy Court or other pending litigation shall be entitled to receive distribution(s) under the Plan only if and after the Claims become Allowed Claims.

Below is the estimated percentage recovery on account of Allowed Claims and Equity Interests in each Class as well as Unclassified Claims under each of the Plans.

| Class | Estimated Percentage of Recovery |
|---|---|
| Unclassified:  Administrative Expense Claims | 100% or as agreed |
| Unclassified:  Tax Claims | 100% |
| Class 1: Allowed Secured Claim of WBCMT in Metroplaza | 100% |
| Class 2: Allowed Unsecured Claims in the Inn and Metroplaza | 50% |
| Class 3: Secured Claim of the Township of Woodbridge | 100% |
| Class 4: Deficiency Claim of WBMCT in Metroplaza | 0% |
| Class 5: Disputed Claims of WBCMT in the Inn | 0% |
| Class 6: Debtors' Equity Holder Claims | 0% |

16

1. **Allowed Secured Claim of WBCMT (Class 1)**

The allowed secured claim of WBCMT comprises Class 1 and is to be allowed in an agreed upon amount. The Debtors have proposed $40 million and are awaiting a response from WBCMT.  WBCMT shall be entitled to credit bid up to the full amount of its allowed secured claim at the Sale to be scheduled as provided in the Plan and in the Confirmation Order.  In the event that WBCMT is the successful bidder at the Sale, it shall upon the Closing Date transfer to the Debtors by wire transfer an agreed upon sum representing the WBCMT Carve Out. The parties are discussing a sum between $750,000 and $1,000,000.  Should WBCMT be the successful bidder it will receive the Property in full satisfaction of its Class 1 claim.

Should WBCMT elect to accept in lieu of the Property, the purchase price as tendered by a successful bidder, less the Estate Carve Out, it shall accept such cash payment in full satisfaction of its secured claim. **The Class 1 Claim is impaired.**

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Class 1 consists of the allowed secured claim of WBCMT in the Metroplaza case. | N | Y | WBCMT shall be entitled to credit bid up to the full amount of its allowed secured claim at the Sale to be scheduled in the Confirmation Order.  In the event that WBCMT is the successful bidder at the Sale, it shall upon the Closing Date transfer to the Debtors' counsel by wire transfer the WBCMT Carve Out. Should WBCMT be the successful bidder it will receive the Property in full satisfaction of its Class 1 claim.  Should WBCMT elect to accept the purchase price as tendered by a third party bidder, less the Estate Carve Out, it shall accept such cash payment in full satisfaction of its secured claim. |

17

### 2.    Allowed Unsecured Claims in the Inn and Metroplaza (Class 2)

Class 2 consists of the allowed unsecured claims in the Inn and Metroplaza.

**Class 2 Claims are impaired.**

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Allowed Unsecured Claims | N | Y | Allowed Unsecured Claims in the Inn and Metroplaza cases comprise Class 2. Each Holder of an Allowed Unsecured Claim ("Allowed Claimant") in Class 2 shall, on the Effective Date, be entitled to receive its pro rata share of the Allocated Available Cash remaining after payment in full of priority and administrative expenses, together with its pro rata allocated share of the collection of proceeds from liquidation of the Creditor Trust Assets. Available Cash and the proceeds of the liquidation of the Trust Assets shall be allocated seventy (70%) percent to allowed claims in the Inn case and thirty (30%) to allowed claims in the Metroplaza case. |

### 3.    Allowed Secured Claim of the Township of Woodbridge (Class 3)

Class 3 consists of the allowed secured claim of the Township of Woodbridge in the invoiced amount of $161,979 together with interest thereon, for sewer charges for the year 2012 and is a lien upon the Building and Land held by Metroplaza. The Class 3 claimant shall receive payment in full of its secured claim from the Available Cash upon the Effective Date. **The Class 3 Claim is unimpaired.**

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Allowed Secured Claim of the Township of Woodbridge for sewer charges. | N | N | Class 3 consists of the allowed secured claim of the Township of Woodbridge in the invoiced amount of $161,979 together with interest thereon for sewer charges for the year 2012 and is a lien upon the Building and Land held by Metroplaza. The Class 3 claimant shall receive payment in full from the Available Cash upon the Effective Date. |

18

1464949.03

4.    **Deficiency Claim of WBCMT in the Metroplaza case (Class 4)**

Class 4 consists of the deficiency claim of WBCMT in the Metroplaza case.

**Class 4 claims are impaired.**

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|-------|-------------|---------------|----------------|-----------|
| 4 | Deficiency Claim of WBCMT in the Metroplaza case. | N | Y | WBCMT shall not receive a distribution on account of its Class 4 claim. |

5.    **Disputed Unsecured Claim of WBCMT in the Inn case (Class 5)**

Class 5 consists of the disputed unsecured claim of WBCMT in the Inn case.

**Class 5 Claims are impaired.**

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|-------|-------------|---------------|----------------|-----------|
| 5 | Class 5 Consists of the Disputed Claims of WBCMT. | N | Y | WBCMT shall not receive a distribution on account of its Class 5 claim. |

6.    **Debtors' Equity Holder Claims (Class 6)**

Class 6 consists of the equity holder's claims.  The equity holder shall receive no

distribution or thing of value under the Plan if the successful bidder at the sale is

WBCMT.  In the event the successful bidder is other than WBCMT, the Debtors shall

each receive a 2.5% interest in the Purchaser which interest shall be subordinated to all

capital invested and loans obtained by the Purchaser with no managerial or voting

rights in the Purchaser.  Neither of the Debtors shall retain any interest in the Excluded

Assets. Under certain circumstances Wolosoff may be retained by the Purchaser as a

consultant and may provide services to the Purchaser at an annual consulting fee of

19

$100,000 for a limited period of time.  Wolosoff shall not have a vote under the Plan.

**Class 6 Claims are impaired.**

| CLASS | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | Equity Holder Claims<br><br>Class 6 consists of Wolosoff. | Y | Y | The equity holder shall receive no distribution or thing of value under the Plan if the successful bidder at the sale is WBCMT.  In the event the successful bidder is other than WBCMT, the Debtors shall each receive a 2.5% subordinated interest in the Purchaser with no voting or managerial rights. Wolosoff shall not have a vote under the Plan. Under certain circumstances Wolosoff may be retained by the Purchaser with a consulting agreement for a limited period of time at an annual consulting fee of $100,000. |

7.    **Unclassified Claims**

Section 1123(a)(1) of the Bankruptcy Code provides that certain Claims, including Administrative Expense Claims and Tax Claims, shall not be designated into Classes.  The Unclassified Claims treated herein are described below.

a.    <u>Administrative Expense Claims</u>.   Except to the extent that the Holder of an Allowed Administrative Expense Claim agrees otherwise, Holders of Allowed Administrative Expense Claims shall receive, on the later of (a) Effective Date (or as soon as practicable thereafter), (b) the date on which such Claims become Allowed Administrative Expense Claims, or (c) the date upon which such Claim is to be paid under its terms, payment in Cash of one hundred (100%) percent of said Allowed Administrative Expense Claim or as the parties may otherwise agree.  In order to be entitled to payment, such Claims must be asserted, and become Allowed Claims.

1464949.03

As of May 31, 2013 estimated and unpaid Debtors professional fees and expenses including Debtors' counsel, PwC and the Committee's professionals for the period since the Filing Date are in excess of $1,300,000. It is anticipated that additional fees will accrue through Confirmation. Fee applications have been filed through May 31, 2013. Fees due to the United States Trustee are or shall be current through the date of filing of this Disclosure Statement and shall be current through Confirmation.

b.    <u>Tax Claims</u>.  There are pre-petition Federal and New Jersey State tax claims filed against the Debtors. The Debtors do not believe that these claims are valid claims. WBCMT has objected to the claims of the Department of Treasury and the State of New Jersey and the Debtors will also be objecting to these claims. Notwithstanding, the Debtors are current with post petition tax claims. There is a sewer lien filed by Woodbridge Township for the year 2012 in the invoiced amount of $161,979 which shall be paid by the Debtors from Available Cash on or before the Effective Date.

c.    <u>United States Trustee Fees</u>.  All fees payable by the Debtors under section 1930 of Title 28 of the United States Code that have not been paid prior to the Effective Date shall be paid by Debtors on the Effective Date.

**B.    <u>Executory Contracts and Unexpired Leases</u>**

All executory contracts and unexpired leases to which the Debtors are parties that have not been assumed or rejected prior to the Effective Date will be assumed or rejected as determined by the Purchaser of the Property.

The Hilton Franchise Agreement is an executory contract. WBCMT has a "comfort letter" with the Hilton and accordingly if it is the successful bidder, the Debtors

21

will assume the Franchise Agreement and assign it to WBCMT.  If a third party is the successful bidder and has not received Hilton's consent to the assignment of the franchise, the Debtors and Hilton may enter into a consensual termination agreement or alternatively, the Purchaser shall advise the Debtors of its preference.  Hilton and the Debtors are discussing alternatives as of this date.  Prior to the Confirmation hearing the Debtors shall file a Plan Supplement explaining the decision with respect to the Hilton Franchise.

### C.     **Means of Implementing the Plan**

     1.     Transactions on the Effective Date

        (a)     The Effective Date.  On the Effective Date the following shall occur: The Court shall schedule as part of the Confirmation Order a Sale of the Property. Those interested parties who qualify as "qualified bidders" shall have executed a Bidding Procedures Agreement and APA and shall have deposited the requisite deposits with Debtors' counsel.  At the Sale, the Property shall be sold to the bidder submitting the highest and best offer.

        (b)     Funding of the Plan.    At the Closing following the Sale, the successful bidder shall tender the Estate Carve Out or in the event that WBCMT is the successful bidder, the WBCMT Carve Out. The Carve Out together with the cash on hand in the DIP accounts, accounts receivable and causes of action of the Debtors as of the Closing Date together with the liquidation of the Trust Assets by the creditor Trustee shall be used to fund the Plan.

        (c)     Structure of Transaction.  In the event that the successful bidder is WBCMT pursuant to a credit bid and the payment of the WBCMT Carve Out the Debtors

22

shall deliver a Bargain and Sale Deed pertaining to the Property to WBCMT or its designee together with such other ancillary documents as are reasonably required to effectuate the transfer of title to the Property from the Debtors to WBCMT or its designee.

In the event that the successful bidder is a party other than WBCMT, the transaction shall be accomplished by the transfer of all of the Assets and Property except the Excluded Assets to the Purchaser in exchange for the Estate Carve Out and the Purchaser shall in addition transfer to the Debtors each a 2.5% subordinated membership interest in the entity that acquires the Property. The subordinated membership interest so transferred shall be subordinated to a return to the investors in the Purchasers of all capital invested with a return of no less than 15% IRR; and the membership interest shall have no voice in management nor right to vote.

    2.    <u>Distribution of Property</u>

    (a)    <u>Requirement for Allowance of Claims</u>

No Distributions will be made on account of any Claim that is not an Allowed Claim. Debtors shall have a period of ninety (90) days following the Effective Date to file objections to claims.

Claims filed after the Bar Date will not be allowed and will receive no distribution without the entry of an Order of the Court specifically allowing such claim.

    (b)    <u>Time and Method of Distributions</u>

The distributions under the Plan other than distributions to administration, priority and secured claims in the first instance will be made by the

23

Creditor Trustee, as Distribution Agent of the Creditor Trust.  A copy of the Creditor

Trust is attached hereto as **EXHIBIT C**.  Greenbaum shall be the Disbursing Agent for

the Inn and Trenk shall be the Disbursing Agent for Metroplaza with respect to

distribution to allowed claims of administrative, priority and the secured claim of the

Township of Woodbridge.  After the initial distribution date, the Creditor Trustee shall

immediately take all actions necessary to obtain an order closing the Bankruptcy Case

pursuant to section 350 of the Bankruptcy Code.

Distribution under the Plan will be made upon the Distribution Date

and will be comprised of monies remaining from the Closing Proceeds and the Cash on

Hand after payment of allowed fees of Professionals and other administrative expenses

and priority payments.  Distributions under the Plan will be made by Debtors' counsel as

Distribution Agent.   It is anticipated that distributions to Class 2 Creditors will

commence approximately ninety (90) days after the Effective Date that being the

Distribution Date as defined in the Plan.  Unless the entity receiving a payment agrees

otherwise, any payment in Cash to be made by the Distribution Agent will be made, at

the election of the Distribution Agent, by check drawn on a domestic bank or by wire

transfer from a domestic bank.

Subject to the provisions of Bankruptcy Rule 2002(g), and except

as provided in the Plan, Distributions to Holders of Allowed Claims will be made at the

address of each such Holder set forth on the Schedules unless superseded by the

address set forth on proofs of Claim filed by such Holders, or at the last known

addresses of such Holder if no proof of Claim is filed, or if the Distribution Agent or

Debtors have been notified in writing of a change of address.  Upon completion of the

distribution, counsel for the Distribution Agent shall immediately take all actions necessary to obtain an order closing the Bankruptcy Case pursuant to section 350 of the Bankruptcy Code.

(c)     Time Bar to Cash Payment

Any Unclaimed Property will be deemed paid to such entitled Holder, and such Holder will not be entitled to any future Distributions under the Plan. Any Unclaimed Property shall constitute Available Cash and be redistributed to Holders of Allowed Claims in such Class on the date of the next Distribution.   Such Unclaimed Property shall be deposited with the Registry maintained by the Clerk of the United States Bankruptcy Court for the District of New Jersey.

(d)     Compliance with Tax Requirements/U.S. Trustee Fees

Debtors must comply with all withholding and reporting requirements imposed on it by taxing authorities and governmental units and the Debtors' obligations to pay the U.S. Trustee's quarterly fees under 28 U.S.C. §1930(a)(6).  In order to permit the U.S. Trustee to properly calculate any fees owed under 28 U.S.C. §1930(a)(6), Debtors shall file quarterly interim statements with the U.S. Trustee.

(e)     Set-Offs

Debtors may, pursuant to sections 502 and 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim, and the Distributions to be made pursuant to the Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that Debtors may have against the Holder of such Allowed Claim;

25

provided, however, that neither the failure to effect such a setoff, nor the allowance of any Claim under the Plan, will constitute a waiver or release by Debtors, of any such claims, rights, and causes of action that Debtors may possess against such Holder; and, provided, further, that nothing contained in the Plan is intended to offset the rights of any Creditor to effectuate a setoff prior to the Effective Date in accordance with the provisions of sections 362 and 553 of the Bankruptcy Code.

(f)     De Minimus Distributions

Any other provision of the Plan notwithstanding, the Distribution Agent shall not be required to make Distributions to any creditor in an amount less than $1.00.  Cash allocated to an Allowed Claim but withheld from Distribution pursuant to this subsection shall be held by Debtors for the account of and future distribution to the Holder of such Allowed Claim.  Cash allocated to an Allowed Claim but withheld from the Distribution pursuant to this subsection shall be distributed as provided in the Distribution provisions of the Plan, and the Holder of such Allowed Claim shall have no further interest therein or rights with respect thereto.  As of the date of this Disclosure Statement and pending any claims filed or allowed, no creditors will be receiving a De Minimus Distribution.

(g)     Treatment of Disputed Claims

(i)     Estimation of Claims

Debtors may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, an

26

objection during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated will constitute the Allowed amount of such Claim. If the estimated amount does not constitute a maximum limitation on the amount of such Claim, Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Nothing herein is intended to limit or change the rights afforded creditors under the Bankruptcy Code, nor limit any rights of appeal from an Order of the Bankruptcy Court.

(ii)    Payments and Distributions on Disputed Claims

Debtors shall maintain a reserve on account of any distributable amounts required to be set aside on account of Disputed Claims as necessary to provide required distributions as if such Claim were an Allowed Claim. The reserves shall be established in separate accounts.

At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, Debtors may, but shall not be required to, distribute to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Plan. Such Distribution, if any, will be made on the earlier of the next Distribution date, if any or ninety (90) days after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order. No interest will be paid on

27

Disputed Claims that later become Allowed or with respect to any Distribution to such

Holder.

(iii)   Pre-Payment of Allowed Claims

Debtors shall have the absolute right, in their sole discretion,

to pre-pay at any time all or a portion of (i) any class of Allowed Claims so long as each

claimant in the Class is paid the same proportional amount, and (ii) any Unclassified

Claim.  Any prepayment shall be without penalty or interest.

3.   Post-Effective Notice

Unless otherwise required under the terms of the Plan, on and after the

Effective Date, all notices required to be given in this Case must be given to counsel to

the Debtors and the United States Trustee.  Notices shall be delivered via electronic

mail, facsimile, overnight courier service, or first-class U.S. mail, postage prepaid.  Any

notice provided to the parties specified herein and in accordance herewith shall be

deemed duly given and sufficient.

4.   Limitation of Liability of Professionals in Connection with the Case,
the Plan, Disclosure Statement and Related Documents

Section 1123(b)(5) of the Bankruptcy Code provides that a plan may

contain any appropriate provision that is not inconsistent with the applicable provisions

of the Bankruptcy Code.  Pursuant to section 1123(b)(5) of the Bankruptcy Code, the

Professionals retained by the Debtor (collectively, the "Professionals Retained by the

Plan Participants") will neither have nor incur any liability to any Person for any act

taken or omitted to be taken after the Petition Date in connection with or related to the

Case, including, but not limited to the formulation, preparation, dissemination,

implementation, Confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including solicitation of acceptances of this Plan ("Exculpated Conduct"); provided, however, that any Professional retained by a Plan Participant could incur liability as a result of any such act or omission to the extent that such act or omission constitutes fraud, gross negligence or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code. All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Professionals Retained by the Plan Participants, whether directly, derivatively, on account of or respecting any claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

## IV.    DISCLOSURES REQUIRED BY 11 U.S.C. §§1129(a)(4) AND (5)

Section 1129(a)(4) of the Bankruptcy Code provides that a plan can be confirmed only if any payment made or to be made by a debtor or by a person issuing securities or acquiring property under a plan for services or for costs and expenses in connection with the case or in connection with the plan and incident to the case, has been approved by, or is subject to approval by the Bankruptcy Court as reasonable. Article VI of the Plan meets the requirements of §1129(a)(4) of the Bankruptcy Code.

Section 1129(a)(5) of the Bankruptcy Code conditions confirmation on disclosure of the identity and affiliates of any individual proposed to serve after Confirmation as a director, officer, or voting trustee of the Debtors. Section 1129(a)(5) further requires

29

that: (i) appointment to or continuance in such office of such individual be consistent with the interests of Creditors and equity security holders and with public policy; and (ii) the Debtors disclose the identity of any insider who will be employed or retained by the organized entity and the nature of any compensation for such insider.

## V.    FEASIBILITY

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation not likely be followed by liquidation or the need for further financial reorganization unless such liquidation is proposed by the Plan. The Plan is a plan of liquidation. Debtors are unaware of any impediment to Confirmation of the Plan. The Plan provides for the Debtors to sell at auction all of their assets excluding only certain Excluded Assets as defined in the Plan and disbursement of the cash available for distribution to Holders of Allowed Claims as set forth in the Plan in accordance with the priority scheme of the Bankruptcy Code.

## VI.    LIQUIDATION ANALYSIS

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims of the Chapter 7 are paid next. Next,

1464949.03

administrative claims of the Chapter 11 are paid.  Unsecured creditors are paid from any remaining proceeds, according to their right to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this requirement is met here because Debtors' post petition income will not be used for distribution to creditors and the Chapter 7 administration costs will deplete the assets available for creditors.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation:

### ASSETS

| Real Property | | $20,000,000.00 | |
|---|---|---|---|
| Minus: | 1st Mortgage | | $54,000,000.00 |
| | 2nd Mortgage | | |
| | Any exemption | | |
| | Costs of Sale (6%) | | $ 1,200,000.00 |
| Net Equity/Loss | | $20,000,000.00 | $55,200,000.00 |
| Personal Property/Business Assets | | $ 1,500,000.00 | |
| | | | |
| **Total Assets:** | | $21,500,000.00 | **$55,200,000.00** |
| | | | |

### LIABILITIES
Priority Claims:

| Chapter 7 Admin. Expenses: | | $ 750,000.00 |
|---|---|---|
| Chapter 11 Admin. Expenses: | | $1,500,000.00 |
| Other Priority Claims: | | $ 150,000.00 |

| TOTAL PRIORITY CLAIMS | | $2,400,000.00 |
|---|---|---|

Amount Available for unsecured claims                                    0.00
(Total assets minus priority claims)
**TOTAL UNSECURED CLAIMS:**
Estimated Dividend in Chapter 7                                          0.00
(amount available - unsecured claims)

Under the Plan, it is estimated that Class 2 Claimants will share in the aggregate of a fund consisting of the Allocated Cash available after payment of administrative and priority and sewer lien payments together with proceeds of liquidation by the Creditor Trustee of the collection of accounts receivable and avoidance claims. For purpose of the Disclosure Statement it is anticipated that Class 2 claimants will share in a fund in excess of $500,000. In a Chapter 7 liquidation, allowed claims will be paid nothing.

## VII.   RELEASE OF CLAIMS AGAINST INSIDERS AND AFFILIATES

While there are intercompany transactions between the Debtors and certain affiliates and the principal of the Debtors, upon investigation, the claims are deemed uncollectible. All claims against affiliates and the principal of the Debtors will be retained by the Debtors and not assigned to the Creditor Trust and will be released.

## VIII.  CONFIRMATION

The purpose of this Disclosure Statement is to provide Creditors with adequate information to enable them to make an informed decision regarding the merits of the Plan. A hearing on this Disclosure Statement was held on _____ __, 2013 at 11:00 a.m. The Bankruptcy Code contemplates that Creditors will vote with regard to Chapter 11 plan of Liquidation. The following paragraphs summarize the voting and the confirmation requirements in Chapter 11 proceedings. This summary constitutes

1464949.03

neither a complete recital of the Bankruptcy Code requirements regarding voting and confirmation nor a conclusive statement of Creditor rights.  Any Creditor or Interest Holder with questions concerning voting, confirmation, or other matters should seek the advice of counsel.  Pursuant to Bankruptcy Code section 1129, in order to confirm the Plan, the Bankruptcy Court must find, among other things that:  (i) the Plan complies with applicable provisions of the Bankruptcy Code; (ii) the Debtors have complied with the applicable provisions of the Bankruptcy Code; (iii) the Debtors proposed the Plan in good faith and not by any means forbidden by law; (iv) the Debtors have made the disclosure required by Section 1125 of the Bankruptcy Code; (v) the Plan has been accepted by the requisite vote of Creditors; (vi) the Plan is feasible and Confirmation is not likely to be followed by liquidation unless such liquidation is provided for in the Plan; (vii) the Plan is in the best interest of Creditors by providing to Creditors on account of such claims or Interest property of a value, as of the Effective Date, that it is not less than the amount that such Creditor would receive or retain in a Chapter 7 liquidation; (viii) all fees and expenses required under 28 U.S.C. §1930 as determined by the Bankruptcy Court a hearing on confirmation have been paid or the Plan provides for payment of such fees on the Effective Date; and (ix) the Plan addresses Priority Claims. As indicated above, the Plan must be accepted by the requisite vote of Creditors in order to be confirmed by the Bankruptcy Court.  Section 1129 of the Bankruptcy Code requires that each Class of Claims accept the Plan by the requisite majority, or that the class be unimpaired under the Plan and deemed to have accepted the Plan without solicitation.  Only Creditors holding Claims which are impaired under the Plan are entitled to vote to accept or reject the Plan.  Generally a class is "impaired" unless the

1464949.03

legal, equitable or contractual rights attaching to the Claims of that class are unaltered by the Plan or the Plan proposes to cure pre-Petition Date defaults and reinstate maturities and compensate the holder of such Claim for any damages or proposes payment in full in cash.   Classes 1, 2, 4 and 5 are impaired, and holders of Allowed Claims in those classes are entitled to vote to accept or reject the Plan.

The majorities are required for acceptance by an impaired class relate to both the amount of Allowed Claims in the class and the number of members in the class that actually vote for acceptance or rejection of the Plan.   An impaired class is deemed to have accepted the Plan if the holders of at least two-thirds in dollar amount and a majority in number of the Allowed Claims of the class vote to accept the Plan.   Only holders of Allowed Claims entitled to vote, who actually do vote to accept or reject the Plan are counted in this tabulation.   A Creditor's vote may be disregarded to the extent the Bankruptcy Court determines that Debtors did not solicit or procure the Creditor's acceptance or rejection in good faith.

If the Plan is accepted by all classes that are impaired under the Plan, the Plan will be confirmed provided that the Bankruptcy Court finds that the Plan satisfied the other conditions set forth in section 1129(a) of the Bankruptcy Code.   If, however, the voting members of an impaired class do not unanimously vote for the Plan, but nevertheless accept the Plan by at least the requisite two-thirds of the amount and a majority number of claims that are actually voted, then to be confirmed over the objection of a member of such impaired class, the Plan must provide that each member of the class receive property of the value, as of the Effective Date, not less than the amount such Creditor would receive under Chapter 7 of the Bankruptcy Code.   The Plan

34

1464949.03

may be confirmed even though it is not accepted by all impaired classes to the extent (i) at least one impaired class accepts the Plan; (ii) the Plan is "fair and equitable" as to those impaired classes not accepting the Plan; (iii) the Plan does not "discriminate unfairly" against any impaired class electing not to accept the Plan, and (iv) the Plan meets the conditions set forth in section 1129(b) of the Bankruptcy Code regarding cram down. The "fair and equitable" standard requires, among other things that (i) no holder of a claim or interest in any class junior to any dissenting class of unsecured Claims receive or retain an account of such Claims or Interest unless the dissenting class of unsecured Claims receives full compensation for its Allowed Claims; and (ii) the members of any dissenting class of secured claims either retain their lien and receive deferred cash payments with a value as of the Effective Date of the Plan equal to the value of their interest in the Debtors' property or otherwise receive the "indubitable equitable" standard to prohibit any class of Claims senior to a dissenting class from receiving greater than one hundred (100%) percent of the value of the Allowed Claims in the class. The requirement that the Plan not "discriminate unfairly" simply means that the dissenting class must be treated substantially the same as other classes of equal rank. Debtors intend to rely upon the cram down provisions of the Bankruptcy Code to the extent necessary.

## IX.    POST-CONFIRMATION

### A.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Case under section 1112(7) after the Plan is confirmed if there is a default in performing the Plan. If the Bankruptcy Court orders the Case converted after the Plan is confirmed,

1464949.03

property of the Estate that has not been disbursed pursuant to the Plan will revest in the Chapter 7 estate.

The Bankruptcy Court may revoke the order if and only if the Confirmation Order was procured by fraud and if a party in interest brings a motion to revoke Confirmation within one hundred eighty (180) days after the entry of the Confirmation Order.

## X.  **CONCLUSION**

The Debtors believe that acceptance of the Plan by Creditors is in the best interest of all parties, and that Confirmation will provide the best and most prompt recovery for Creditors. The Debtors urge all parties to vote in favor of the Plan.

In executing this document in his capacity as managing member of each Debtor, Mr. Wolosoff is not hereby indicating his consent, in his individual capacity, to the terms of the proposed Plan or waiving any of his individual rights, claims, interests, counter-claims and defenses, all of which rights, claims, interests, counter-claims and defenses (in Mr. Wolosoff's individual capacity) are, and should be deemed, hereby expressly preserved.

**Metroplaza Hotel, LLC**

/s/ James K. Wolosoff

By:_____
    James K. Wolosoff, Managing Member

**Dated:  July 17, 2013**

**Metroplaza Holdings Inc.**

/s/ James K. Wolosoff

By:_____
    James K. Wolosoff, Managing Member

**Dated:  July 17, 2013**

**Inn at Woodbridge, Inc.**

/s/ James K. Wolosoff

By:_____
    James K. Wolosoff, Managing Member

**Dated:  July 17, 2013**

1464949.03